PROB12C (9/14)

# UNITED STATES DISTRICT COURT
## FOR THE
# WESTERN DISTRICT OF WISCONSIN
### PETITION FOR SUMMONS FOR OFFENDER UNDER SUPERVISION

**Name of Offender:**  Joseph Garrison  
Madison, Wisconsin

**Case Number:** 25-cr-43-jdp-1

**Name of Sentencing Judicial Officer:** Honorable Lewis A. Kaplan (Southern District of New York)  
**Name of Presiding Judicial Officer:** Honorable James D. Peterson

**Date of Original Sentence:** January 31, 2024  
**Offense:** Conspiracy to Commit Computer Intrusions, in violation of 18 U.S.C. § 371, a Class D felony

**Original Sentence:** 18 months imprisonment, to be followed by 3-year term of supervised release; $1,327,061 restitution

**Type of Supervision:** Supervised release  
**Assistant U.S. Attorney:** Elizabeth Altman  
**Date Supervision Commenced:** April 29, 2025  
**Defense Attorney:** To Be Determined

## COURT HISTORY

On April 25, 2025, jurisdiction of Mr. Garrison's case was transferred to the Western District of Wisconsin.

On April 29, 2025, the Court ordered the modification of Mr. Garrison's conditions of supervised release to include Special Condition No. 5, requiring Mr. Garrison to provide advance notification of all IT devices used by Mr. Garrison and allow the probation office to install monitoring software on any device owned or operated by him. This modification was requested due to Mr. Garrison's offense involving online illegal activities. Mr. Garrison is also subject to state supervision in Dane County, Wisconsin, Circuit Case No. 22CF2055; and, per his state supervision rules, he was restricted from accessing the internet as their agency does not have the means to monitor IT devices. On April 24, 2025, Mr. Garrison agreed to this modification of his conditions and signed a *Probation Form 49*. Due to the inclusion of his condition Mr. Garrison's state agent was willing to remove the internet restriction knowing his devices have monitoring software installed, and oversight was provided by the federal probation office.

## PETITIONING THE COURT

☒ To issue a summons.

The probation officer alleges that Joseph Garrison has violated the following conditions of supervision:

| **Violation** | **Nature of Noncompliance** |
|---|---|
| Mandatory Condition: | "You must not commit another federal, state, or local crime." |
| Special Condition No. 5: | "Defendant shall provide the supervising U.S. Probation Officer advance notification of any devices associated with or falling within the general category of information technology (IT) that produce, manipulate, store, communicate or |

disseminate information used by defendant. This includes external and portable hard drives. The probation office is authorized to install applications to monitor any such devices owned or operated by defendant. Defendant is required to comply with the monitoring agreement and may not disable or circumvent any applications. Defendant shall consent to and cooperate with unannounced examinations of any technological equipment owned or used by defendant, including but not limited to retrieval and copying of all data from all information technology devices and any internal or external peripherals based on reasonable suspicion of contraband or illegal activity. The examinations may involve removal of such equipment for the purpose of conducting examination."

In September 2025, the undersigned officer was contacted by an FBI special agent, who reported their agency had received an anonymous tip regarding Mr. Garrison. The anonymous tip stated:

*"Joseph Hamilton Garrison was convicted for fraud before and is on parole. He has a secret phone that his parents and P.O officer don't know about. It is an IPhone 12 that he uses to communicate with other people that do fraud in an online group named "zoinbase". This group is on telegram and is involved in tons of fraud. Joseph goes on an online alias known as "Tony". He uses apps such as discord, Telegram, Instagram, and Tiktok to communicate with others that do fraud. He was also talking sexually to a minor. I hope this helps. Thank you"*

On October 15, 2025, a search of Mr. Garrison's residence was completed. An unauthorized iPhone 12 cell phone was located in Mr. Garrison's bedroom on his bed, under his pillow. This unauthorized device was seized.

On this same date, the undersigned officer spoke with Mr. Garrison who reported he had the unauthorized iPhone 12 prior to his incarceration and had been using it to communicate with friends during his supervised release period. When asked why he did not communicate with friends on his authorized cell phone, he claimed he was not "comfortable doing so." He denied using the phone to do anything illegal, did not disclose any further information, and responded with "don't know" to most of the undersigned officer's inquires. Mr. Garrison claimed he did not recall the password and refused to use facial recognition to unlock the phone when requested.

| | |
|---|---|
| Financial Condition: | "The restitution will be payable in monthly installments commencing on the first day of the second month following the month in which you are released from the term of imprisonment imposed. Each monthly payment shall be equal to the sum of the earned income amount and other income amount. The term "earned income" means remuneration for personal services. The term "other income" means revenues from all other sources, other than public assistance and unemployment insurance compensation. The term "earned income amount" is defined as 15 percent of your earned income up to $5,000, plus 45 percent of earned income in excess of $5,000 for the preceding month. The term "other income" is defined as 80 percent of your other income for the preceding month." |

Mr. Garrison has not made a good faith effort to submit monthly restitution payments. He agreed he could afford to pay $25 month while he was unemployed and once he gained employment his monthly amount would be reassessed. He has paid a total of $75 toward his restitution since his release from imprisonment. Mr. Garrison last payment was submitted in August 2025.

**Adjustment to Supervision:** On April 29, 2025, Mr. Garrison's supervised release commenced, and he resided with his parents and sibling in Madison, Wisconsin. He resided at this residence prior to his federal incarceration. He resumed meeting with his mental health provider for outpatient individual biweekly counseling sessions. Mr. Garrison reported he intended to use an Android cell phone and laptop, these devices were approved, and monitoring software was installed on both devices.

Mr. Garrison expressed a desire to obtain employment and potentially re-enroll in school. He recognized he needed to establish structure, a productive routine, and avoid spending most of his time online. His acknowledged the excessive amount of time spent online led to him getting involved in activity that then led to his involvement in his offense. Despite Mr. Garrison's statements of motivation, his initial behavior reflected a lack of motivation to search for employment. The undersigned officer had to encourage him regularly to search for jobs and provided him with various employment resources. In June 2025, the undersigned officer assigned him a job log to document his efforts to hold him accountable, and he agreed to a goal of applying for 10 jobs a week. Again, Mr. Garrison did not follow through with this goal, which was reflected in his failure to submit his job logs to the undersigned officer as instructed, observations from the monitoring data of his devices that reflected minimal activity related to job search and applications, and statements from Mr. Garrison which confirmed he was not complying with this agreed upon goal. Eventually, Mr. Garrison's efforts improved and on September 4, 2025, Mr. Garrison began working at Goodwill full-time as a cashier.

In September 2025, the undersigned officer was contacted by an FBI special agent, who reported their agency had received an anonymous tip regarding Mr. Garrison, which is provided above. Mr. Garrison has a history of engaging in online fraud as evidenced by his instant offense (i.e. "Draftkings Attack") and prior to his instant offense (i.e. "Goat Shop") and his admitted involvement in these online criminal activities. Additionally, during his supervised release period he reported to the undersigned officer he was reconnecting with friends; however, no communication with friends was observed in either of his authorized, monitored devices. Given this information in combination with the information reported in the anonymous tip the FBI received, the probation office established reasonable suspicion to conduct a search of Mr. Garrison's residence.

On October 15, 2025, a search of Mr. Garrison's residence was completed. Mr. Garrison was at work when probation officers arrived at the residence. Mr. Garrison's father was advised of the reason for the probation officers presence and intent to conduct a search, and he cooperated with the search. An unauthorized iPhone 12 cell phone was located in Mr. Garrison's bedroom on his bed, under his pillow. This unauthorized device was seized. The undersigned officer then went to Mr. Garrison's place of employment to inform him of the search results and provide him an opportunity to provide an explanation. Mr. Garrison agreed to meet and talk with the undersigned officer outside of his employment. Mr. Garrison responded to the majority of the undersigned officer inquiries with, "I don't know." Eventually he admitted he had the iPhone 12 prior to his incarceration and had been using it to communicate with friends during his supervised release period. When asked why he did not communicate with friends on his approved cell phone, he claimed he was not "comfortable doing so." He denied using the phone to do anything illegal and did not disclose any further information. Mr. Garrison claimed he did not recall the password to unlock the phone and refused to use facial recognition to unlock the phone. He was informed that the device would be submitted for forensic analysis. He was warned that he was not to do anything that would interfere with this ongoing investigation. Mr. Garrison denied having any other undisclosed or unauthorized IT devices in his possession.

Shortly after the conversation with the undersigned officer on October 15, 2025, Mr. Garrison sent a text message to an unknown number on his monitored cell phone stating, "I'm gone." Another conversation with a friend was observed on October 21, 2025, when Mr. Garrison messaged, "…everything is so bad. I'm cooked…"

During a meeting with his Wisconsin Department of Corrections (WI DOC) supervising state agent following the search, Mr. Garrison did not disclose that he had been in possession of the unauthorized iPhone 12 that was seized

by the federal probation office. Upon learning this information, Mr. Garrison's state supervising agent instructed him into the office on October 28, 2025, to further investigate and obtain a statement. Mr. Garrison's WI DOC agent informed the undersigned officer that Mr. Garrison reported as instructed and responded with "I don't know" to the majority of the questions asked of him during the attempts to obtain a statement. Mr. Garrison was instructed to provide his state agent with information regarding the names of the individuals he was communicating with on the unauthorized device, his internet identifiers, and passwords to his iCloud and any social media accounts, and to do so by the following morning. Mr. Garrison's state agent will keep the undersigned officer updated regarding any other action taken and the status of Mr. Garrison's state supervision.

**Probation Officer's Recommendation:** It is respectfully recommended that a summons be issued to return Mr. Garrison to court for a judicial review hearing. Mr. Garrison's unauthorized iPhone 12 has been sent to a forensic laboratory for further analysis. The probation office was notified it could take several months until the forensic analysis report is completed, but in the event a court date is set the forensic examiner will ensure a written report is provided at least 24 hours prior to the court date. Therefore, it is recommended that a judicial review hearing be scheduled in February 2026 to allow enough time for the forensic analysis to be completed and for the probation office to receive a report and provide this information to the Court and parties. If the report is received sooner or there are delays the probation office will promptly communicate these updates to the Court.

In the meantime, the probation office also respectfully recommends Mr. Garrison participate in a judicial teleconference for the purposes of immediate judicial intervention. It is recommended that the purpose of this teleconference is not to resolve the alleged violations in this report, but for the Court to impress upon Mr. Garrison the seriousness of his behavior, advise further investigation is underway, and to caution against engaging in any further noncompliance between now and the judicial review hearing. Mr. Garrison is a young man, turning 21 years old this month, and his engagement in deceptive and noncompliant behavior less than six months of his supervised release commencing raises concern about his decisions, which suggest he is continuing down a path that resulted in his instant offense.

Assistant U.S. Attorney Elizabeth Altman has been notified of Mr. Garrison's alleged violation and supports a judicial review hearing once the information from the forensic analysis of the device is received. Attorney Altman also supports Mr. Garrison participating in a judicial teleconference as a means for more immediate intervention for similar reasons as outlined above in the probation office's recommendation.

**Penalties:** Pursuant to 18 U.S.C. § 3583(e)(3), if the term of supervised release is revoked, the statutory maximum term of imprisonment is two years because the offense of conviction is a Class D felony.

At this time, the most serious alleged violation in this case is classified as a Grade C violation, pursuant to USSG § 7B1.1(a)(3). A Grade C violation coupled with Criminal History Category I results in an advisory guideline range of imprisonment of three to nine months, if the term of supervised release is revoked.

Pursuant to 18 U.S.C. § 3583(h), another term of supervised release is authorized to follow imprisonment. The statutory maximum term of supervised release that can be re-imposed is 36 months, less any term of imprisonment imposed upon revocation, pursuant to 18 U.S.C. § 3583(b)(2).

## Standard Conditions

The following information is provided for consideration with respect to the revocation proceedings in this matter. Pursuant to the Seventh Circuit Court of Appeals decisions in *United States v. Thompson, et al.,* 777 F.3d 368 (7th Cir. 2015), a sentencing judge must give a reason, consistent with the sentencing factors set forth at 18 U.S.C. § 3553(a), for any non-mandatory condition of supervision.

The standard and special conditions of supervised release that were imposed at the time of original sentencing on January 31, 2024, and the additional special condition that was added on April 29, 2025, were reasonably related to the offense of conviction, as well as the personal history and characteristics of the defendant.

The standard conditions of supervision, as set forth in 18 U.S.C. §§ 3563(b) and 3583(d), have been established by policy of the Judicial Conference, as informed by U.S. Sentencing Commission policy statements in §§5B1.3 and 5D1.3. The District Court for the Western District of Wisconsin has adopted some modifications as a result of Seventh Circuit case law. These standard conditions, adopted from 18 U.S.C. §§ 3563(b) and 3583(d) and numbered below, identify the basic requirements, expectations, and limitations for defendants and address corresponding risk-related or recidivism-related factors. The standard conditions provide probation officers with the means to monitor the conduct of defendants who are under court-ordered supervision by matching supervision and programming to factors correlated with risk.

| STANDARD CONDITIONS OF SUPERVISION | JUSTIFICATION |
|---|---|
| 1) **Defendant shall not knowingly leave the judicial district in which defendant is being supervised without the permission of the Court or probation officer.** | To provide community protection, rehabilitation for defendant, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance.<br>18 U.S.C. § 3553(a)(1), (a)(2)(B) and (C);<br>18 U.S.C. § 3563(b)(14);<br>18 U.S.C. § 3603(2) and (7);<br>USSG §5B1.3(b)(1)(A), (C), (D) and (b)(2); USSG §5D1.3(b)(1)(A), (B), (C) and (b)(2). |
| 2) **Defendant is to report to the probation office as directed by the Court or probation officer and shall submit a complete written report within the first five days of each month, answer inquiries by the probation officer, and follow the officer's instructions. The monthly report and the answer to inquiries shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent.** | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance.<br>18 U.S.C. § 3553(a)(1), (a)(2)(B), (C) and (D);<br>18 U.S.C. § 3563(b)(15) and (17);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §5B1.3(b)(1)(B)(C), (D), (E) and (b)(2);<br>USSG §5D1.3(b)(1)(B), (C), (D) and (b)(2). |
| 3) **Defendant shall maintain lawful employment, seek lawful employment, or enroll and participate in a course of study or vocational training that will equip defendant for suitable employment, unless excused by the probation officer or the Court.** | Evidence based practice research indicates that lawful, stable employment and education are pro-social activities that reinforce the rehabilitation of defendant. Employment and education have been identified as risk factors for recidivism.<br>18 U.S.C. § 3553(a)(2)(B), (C) and (D);<br>18 U.S.C. § 3563(b)(4) and (5);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §5B1.3(b)(1)(C), (D) and (E);<br>USSG §5D1.3(b)(1)(B), (C) and (D). |

| | | |
|---|---|---|
| 4) | Defendant shall notify the probation officer within seventy-two hours of any change in residence, employer, or any change in job classification. | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance.<br>18 U.S.C. § 3553(a)(2)(C);<br>18 U.S.C. § 3563(b)(13), (15), (16) and (19);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §5B1.3(b)(1)(D) and (b)(2);<br>USSG §5D1.3(b)(1)(C). |
| 5) | Defendant shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician. Defendant shall not use any product containing cannabidiol (CBD) or tetrahydrocannabinol (THC), except as prescribed by a physician. | Evidence based practice research indicates the use of illicit chemicals is a risk factor for recidivism. This condition is recommended to assist with defendant's rehabilitation, officer and defendant safety, and to protect the public. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(7); 18 U.S.C. § 3603(3); USSG § 5B1.3(b)(1)(A), (B), (C) and (D); USSG § 5D1.3(b)(1)(A), (B) and (C). |
| 6) | Defendant shall not visit places where defendant knows or has reason to believe controlled substances are illegally sold, used, distributed, or administered. | Evidence based practice research indicates that frequenting places where illicit chemicals are sold, used, distributed or administered increases the risk that defendant will purchase, use or possess illicit chemicals. Individuals involved in the distribution of illicit chemicals present a risk of peer association as identified in the research. This condition supports rehabilitation of defendant and promotes public safety.<br>18 U.S.C. § 3553(a)(1), (a)(2)(B) and (C);<br>18 U.S.C. § 3563(b)(6);<br>18 U.S.C. § 3603(3);<br>USSG §5B1.3(b)(1)(A), (B), (C), (D) and (b)(2);<br>USSG §5D1.3(b)(1)(A), (B) and (C). |
| 7) | Defendant shall not meet, communicate, or spend time with any persons defendant knows to be engaged in criminal activity or planning to engage in criminal activity. | Evidence based practice research indicates that association with peers involved in criminal activity increases the risk of recidivism. This condition promotes and encourages pro-social relationships that are conducive to a law-abiding lifestyle.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C);<br>18 U.S.C. § 3563(b)(6); 18 U.S.C. § 3603(3);<br>USSG §5B1.3(b)(1)(B), (C) and (D);<br>USSG §5D1.3(b)(1)(B) and (C). |
| 8) | Defendant shall permit a probation officer to visit defendant at home, work, or some other mutually convenient location designated by the probation officer at any reasonable time and shall permit confiscation of any contraband observed in plain view by the probation officer. | Community contacts ensure compliance with court-ordered conditions and assist defendant in maintaining a law-abiding lifestyle.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C);<br>18 U.S.C. § 3563(b)(13), (15), (16) and (17);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG§ 5B1.3(b)(1)(A), (B), (C), (D) and (b)(2);<br>USSG §5D1.3(b)(1)(A), (B), (C) and (b)(2). |

| | | |
|---|---|---|
| 9) | **Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.** | To provide for community safety and rehabilitation of defendant.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C);<br>18 U.S.C. § 3563(b)(18);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG § 5B1.3 (b)(1)(A), (B), (C) and (D);<br>USSG § 5D1.3 (b)(1)(A), (B) and (C). |
| 10) | **Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court.** | Evidence based practice research indicates contact with criminals and potential involvement in facilitating other crimes sanctioned by law enforcement officers directly contradicts the condition of no new offenses and criminal associations, which are risk factors for recidivism. Therefore, strict monitoring by the Court/probation office is necessary for the safety of the community, defendant, and the supervising probation officer.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C);<br>18 U.S.C. § 3563(b)(5), (6), (15), (17) and (18);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §5B1.3(b)(1)(A), (B), (C) and (D);<br>USSG §5D1.3(b)(1)(A), (B) and (C). |
| 11) | **Defendant shall report to the probation office in the district to which defendant is released within 72 hours of release from the custody of the Bureau of Prisons, unless instructed by a U.S. Probation Officer to report within a different time frame.** | To review and clarify conditions of supervision imposed by the court at sentencing. To assist with risk and needs assessment, monitoring requirements, release planning, and program referrals. To set goals for supervision. 18 U.S.C. § 5363(b)(15); USSG §§ 5B1.3(c)(1); USSG § 5D1.3(c)(1). |
| 12) | **Defendant shall not possess a firearm, ammunition, destructive device, or dangerous weapon.** | To comply with statutory provisions. To provide for community safety, as well as the safety of the supervising U.S. Probation Officer.<br>18 U.S.C. §§ 921 and 922; 18 U.S.C. § 5363(b)(10); USSG § 5D1.3(c)(10); and *U.S. v. Armour*, 804 F.3d 859, 869 (7th Cir. 2015). |

## Special Conditions

The following special conditions, in addition to the mandatory conditions, would be recommended if an additional term of supervision is deemed appropriate by the Court:

| | SPECIAL CONDITIONS OF SUPERVISION | JUSTIFICATION |
|---|---|---|
| 13) | **Provide the supervising U.S. Probation Officer any and all requested financial information, including copies of state and federal tax returns.** | Recommended based on the need to monitor defendant's financial records, assess his ability to pay toward his court-ordered financial obligations, and monitor his compliance with the payment of restitution. |
| 14) | **Refrain from incurring new credit charges, opening additional lines of credit or opening other financial accounts** | Recommended based on the nature of his offense of conviction involving |

| | | |
|---|---|---|
| | without the prior approval of the supervising U.S. Probation Officer. | fraud, to evaluate his ability to pay toward his court-ordered financial obligations and monitor his compliance with the payment of restitution. |
| 15) | Submit person, property, residence, papers, vehicle, computers [as defined in 18 U.S.C. § 1030(e)(1), or other electronic communications, data storage device, or media], or office to a search conducted by a U.S. Probation Officer at a reasonable time and manner, whenever the probation officer has reasonable suspicion of contraband or of the violation of a condition of release relating to substance abuse or illegal activities; failure to submit to a search may be a ground for revocation; defendant shall warn any other residents that the premises defendant is occupying may be subject to searches pursuant to this condition. | Recommended based on the nature of his offense of conviction, his noncompliance while on supervised release, the need to protect the public from further criminal activity perpetrated by the defendant, and the need to ensure the safety of the supervising U.S. Probation Officer. |
| 16) | Participate in mental health referral, assessment, and treatment as approved by the supervising U.S. Probation Officer and comply with all rules, regulations, and recommendations of the mental health agency or its representative to the extent approved by the supervising U.S. Probation Officer. If defendant is eligible for funding from any source to cover the cost of treatment, defendant is to make reasonable efforts to obtain such funding. Participation in treatment does not require payment by defendant unless it is clear defendant can afford it. | Recommended based on defendant's self-reported history of mental health and participation in treatment during his supervised release. |
| 17) | Defendant shall provide the supervising U.S. Probation Officer advance notification of any devices associated with or falling within the general category of information technology (IT) that produce, manipulate, store, communicate or disseminate information used by defendant. This includes external and portable hard drives. The probation office is authorized to install applications to monitor any such devices owned or operated by defendant. Defendant is required to comply with the monitoring agreement and may not disable or circumvent any applications. Defendant shall consent to and cooperate with unannounced examinations of any technological equipment owned or used by defendant, including but not limited to retrieval and copying of all data from all information technology devices and any internal or external peripherals based on reasonable suspicion of contraband or illegal activity. The examinations may involve removal of such equipment for the purpose of conducting examination. | Based on the defendant's offense of conviction, his past self-reports of engaging in online fraudulent activity, and his possession and use of unauthorized IT device(s) while on supervised release. |

## Mandatory Conditions - 18 U.S.C. § 3583(d)

- Defendant shall not commit another federal, state, or local crime. [Note: Any defendant that has been convicted of a felony offense, or is a prohibited person, shall not possess a firearm, ammunition, or destructive device pursuant to 18 U.S.C. §§ 921 and 922.]

- Defendant shall not illegally possess a controlled substance. Defendant is subject to drug testing according to 18 U.S.C. § 3583(d).

- Defendant shall cooperate with the collection of DNA by the U.S. Justice Department and/or the U.S. Probation and Pretrial Services Office as required by Public Law 108-405.

**Criminal Monetary Penalties**

Defendant shall pay the following total financial penalties in accordance with the schedule of payments set forth in his original judgment.

The defendant is to pay mandatory restitution in the amount $1,327,061 (remaining balance is $1,326,911) to the U.S. Clerk of Court for the Southern District of New York to be disbursed to victims of his instant offense.

The defendant does not have the economic resources to allow himself to make full payment of restitution in the foreseeable future under any reasonable schedule of payments. Pursuant to 18 U.S.C. § 3664(f)(3)(B), he is to begin making nominal payments of a minimum of $25.00 each month, beginning within 30 days of the defendant's release from custody.

The defendant shall notify the Court and the United States Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution.

No interest is to accrue on the unpaid portion of the restitution.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 29, 2025

/s/

Alyssa M. Brody
Senior U.S. Probation Officer

THE COURT ORDERS:
☒ Mr. Garrison is to participate in a judicial teleconference with the Court, facilitated by the supervising U.S. Probation Officer.
☒ The issuance of a summons and a delay in scheduling a judicial review hearing until February 2026, to allow time for a supplement report to be filed by the probation office regarding information gleaned from IT forensic analysis reports.
☐ The issuance of a warrant. THE ORDER IS TO REMAIN UNDER SEAL UNTIL ARREST, WITH THE EXCEPTION THAT IT MAY BE DISSEMINATED TO LAW ENFORCEMENT.
☒ The appointment of counsel upon arrest, if defendant is indigent.
☐ Other:

_____
Honorable James D. Peterson
U.S. District Judge

OCTOBER 29, 2025
_____
Date