PROB12C (11/25)

# UNITED STATES DISTRICT COURT
## FOR THE
# WESTERN DISTRICT OF WISCONSIN
## SUPPLEMENTAL INFORMATION TO BE CONSIDERED

**Person Under Supervision:** Joseph Garrison
Madison, Wisconsin

**Case Number:** 25-cr-43-jdp-1

**Name of Sentencing Judicial Officer:** Honorable Lewis A. Kaplan (Southern District of New York)
**Name of Presiding Judicial Officer:** Honorable James D. Peterson

**Date of Original Sentence:** January 31, 2024
**Offense:** Conspiracy to Commit Computer Intrusions, in violation of 18 U.S.C. § 371, a Class D felony

**Original Sentence:** 18 months imprisonment, to be followed by 3-year term of supervised release; $1,327,061 restitution

**Type of Supervision:** Supervised release
**Assistant U.S. Attorney:** Steven Anderson
**Date Supervision Commenced:** April 29, 2025
**Defense Attorney:** Jeffrey Nichols

## COURT HISTORY

On October 29, 2025, a *Petition for Summons for Offender Under Supervision (ECF Dkt. No. 4)* was filed notifying the Court that the probation office received information from an FBI Special Agent of their agency receiving an anonymous tip alleging Mr. Garrison of violating his conditions by having a cell phone he had not disclosed to his supervising probation officer and using it to engage in online fraud, similar behavior to his instant offense. On October 15, 2025, a search was conducted at Mr. Garrison's residence and a cell phone, matching the description that was alleged, was located and seized from Mr. Garrison's bedroom in the residence. Mr. Garrison did not cooperate with providing the password to this device, and it was sent to the forensic laboratory for further analysis. The Court ordered the issuance of a summons and to schedule a judicial review hearing in February 2026 to allow time for forensic analysis report to be completed. The Court also ordered Mr. Garrison to participate in a judicial teleconference with the Court.

On November 4, 2025, Mr. Garrison participated in a judicial teleconference.

## PETITIONING THE COURT

☒ To consider the following supplemental information.

Supplemental Information: On January 7, 2026, the probation office received a forensic examination report regarding the iPhone 12 that was seized from Mr. Garrison on October 15, 2025. In summary, the lab's forensic tools could not obtain a full file system extraction or the iPhone's password. A partial extraction confirms Mr. Garrison was using this device. A list of installed applications was obtained from the phone, including various messaging, security, and social media applications. The only messaging application data recovered from the phone was from SnapChat and shows a conversation between Mr. Garrison and "Natalie." There were two email addresses associated with Apple accounts, joegarrison_3@icloud.com and hahalolxd7@protonmail.com. Mr. Garrison's SnapChat account was associated to the lmaonotime72@proton.me email account with a username of

"deadkledge."

As this was only a partial extraction, most of the application data was not recovered. It could not be determined if Mr. Garrison was using this device to commit new crimes. If Mr. Garrison provides the password, or once the lab's tools are updated (which may be in a few months), then a full extraction of the phone can be completed.

The following is a list and description of the applications on this device:

Messaging Applications
• TextMe- free mobile application used to give a user a second phone number for calls and texting;
• Anonchat- anonymous online chat application;
• Kik- username based messaging application (doesn't need a phone number to be used) used to exchange messages, videos, pictures, etc., via wireless or mobile network. Can be used to make audio and video calls;
• CallcentricSMS- feature of the Callcentric Voice over IP (VoIP) service which allows a user to send short message service (SMS) text messages;
• TextPlus- free mobile application used to give a user a second phone number for calls and texting;
• AIM- America Online Messaging application;
• Telegram- messaging application;
• Kick- live streaming application; and
• Session Messenger- decentralized encrypted private messaging application which routes messages through The Onion Router (TOR) network.

Social Media Applications
• Snapchat;
• Instagram;
• Discord- Online chat server;
• TikTok; and
• CooMeet- online video chat and dating platform.

Security and Network Tools
• WebProxyTools - tool used to inspect network requests from applications;
• Proxyman - inspect, debug, and understand every network request from your iOS apps with a fast, native experience. No desktop is required;
• Mullvad VPN - a VPN (Virtual Private Network) is a service that creates a private connection to the internet by encrypting your traffic. The outcome: your ISP (internet service provider) can't see your activity and nobody else can use your IP address to track you; and
• HTTP Catcher - HTTP Catcher is a web debugging proxy. It can be used to intercept, inspect, modify and replay web traffic. No need to connect to a computer, HTTP Catcher records HTTP traffic under Wi-Fi and cellular networks in the background. HTTP Catcher makes it easy to test your apps and websites, and you can view requests and responses directly.

Email Applications
• Gmail- Google's email application;
• ProtonMail- secure end to end encrypted email service;
• Outlook- Microsoft's email application; and
• Yahoo Mail- Yahoo's email application.

Third Party Web Browsers
• Opera- known for its privacy features;
• Brave- known for its privacy features; and
• Yandex- Russian web browser.

<u>Digital Wallets</u> (used to track digital assets like Crypto Currency exchange assets and make payments)
• Redotpay - digital currency/crypto wallet;
• SkrillPayments - digital currency/crypto wallet; and
• Exodus- digital currency/crypto wallet.

<u>Shopping</u>
• Whatnot - live streaming shopping platform and community marketplace (eBay with live streaming shopping).

Except for Gmail, Outlook, and Whatnot, none of the applications that were located on Mr. Garrison's seized iPhone 12 are downloaded and/or utilized on his approved, monitored cell phone.

**Adjustment to Supervision:** Since the last report was filed Mr. Garrison has maintained employment at Goodwill. Beginning in November 2025, he has submitted monthly restitution payments in the amount of $325 a month (approximately 15% of his income). He continues to attend mental health treatment.

**Probation Officer's Recommendation:** It is respectfully recommended that this additional information be considered at Mr. Garrison's upcoming judicial review hearing.

Assistant U.S. Attorney Steven Anderson and defense counsel, Jeffrey Nichols have been notified of this filing.

**Penalties:** The *Petition (ECF Dkt. No. 4)* provided the parties with penalties and proposed conditions of supervised release with justifications if another term of supervision was imposed. The additional information in this report does not change the penalties or grade of violation but updated information is provided to reflect changes in the USSG citations for which new conditions are provided.

Pursuant to 18 U.S.C. § 3583(e)(3), if the term of supervised release is revoked, the statutory maximum term of imprisonment is two years because the offense of conviction is a Class D felony.

At this time, the most serious alleged violation in this case is classified as a Grade C violation, pursuant to USSG § 7C1.1(a)(3). A Grade C violation coupled with Criminal History Category I results in an advisory guideline range of imprisonment of three to nine months, if the term of supervised release is revoked.

Pursuant to 18 U.S.C. § 3583(h), another term of supervised release is authorized to follow imprisonment. The statutory maximum term of supervised release that can be re-imposed is 36 months, less any term of imprisonment imposed upon revocation, pursuant to 18 U.S.C. § 3583(b)(2).

**<u>Standard Conditions</u>**

The following information is provided for consideration with respect to the revocation proceedings in this matter. Pursuant to the Seventh Circuit Court of Appeals decisions in *United States v. Thompson, et al.,* 777 F.3d 368 (7th Cir. 2015), a sentencing judge must give a reason, consistent with the sentencing factors set forth at 18 U.S.C. § 3553(a), for any non-mandatory condition of supervision.

The standard and special conditions of supervised release that were imposed at the time of original sentencing on January 31, 2024, and the additional special condition that was added on April 29, 2025, were reasonably related to the offense of conviction, as well as the personal history and characteristics of the defendant.

The standard conditions of supervision, as set forth in 18 U.S.C. §§ 3563(b) and 3583(d), have been established by policy of the Judicial Conference, as informed by U.S. Sentencing Commission policy statements in §§5B1.3 and 5D1.3. The District Court for the Western District of Wisconsin has adopted some modifications as a result

of Seventh Circuit case law. These standard conditions, adopted from 18 U.S.C. §§ 3563(b) and 3583(d) and numbered below, identify the basic requirements, expectations, and limitations for defendants and address corresponding risk-related or recidivism-related factors. The standard conditions provide probation officers with the means to monitor the conduct of defendants who are under court-ordered supervision by matching supervision and programming to factors correlated with risk.

| | STANDARD CONDITIONS OF SUPERVISION | JUSTIFICATION |
|---|---|---|
| 1) | Defendant shall not knowingly leave the judicial district in which defendant is being supervised without the permission of the Court or probation officer. | To provide community protection, rehabilitation for defendant, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance.<br>18 U.S.C. § 3553(a)(1), (a)(2)(B), and (C);<br>18 U.S.C. § 3563(b)(14);<br>18 U.S.C. § 3603(2) and (7);<br>USSG §§5B1.3(b)(1)(A), (C), (D), and (b)(2);<br>USSG §§5D1.3(b)(1)(A)(i), (ii), (iii), and (b)(1)(B). |
| 2) | Defendant is to report to the probation office as directed by the Court or probation officer and shall submit a complete written report within the first five days of each month, answer inquiries by the probation officer, and follow the officer's instructions. The monthly report and the answer to inquiries shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent. | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance.<br>18 U.S.C. § 3553(a)(1), (a)(2)(B), (C), and (D);<br>18 U.S.C. § 3563(b)(15) and (17);<br>18 U.S.C. § 3603(2), (3), (4), and (7);<br>USSG §§5B1.3(b)(1)(B),(C), (D), (E), and (b)(2);<br>USSG §§5D1.3(b)(1)(A)(ii), (iii), (iv), and (b)(1)(B). |
| 3) | Defendant shall maintain lawful employment, seek lawful employment, or enroll and participate in a course of study or vocational training that will equip defendant for suitable employment, unless excused by the probation officer or the Court. | Evidence-based practice research indicates that lawful, stable employment and education are pro-social activities that reinforce the rehabilitation of defendant. Employment and education have been identified as risk factors for recidivism.<br>18 U.S.C. § 3553(a)(2)(B), (C), and (D);<br>18 U.S.C. § 3563(b)(4) and (5);<br>18 U.S.C. § 3603(2), (3), (4), and (7);<br>USSG §§5B1.3(b)(1)(C), (D), (E), and (b)(2);<br>USSG §§5D1.3(b)(1)(A)(ii), (iii), (iv), and (b)(1)(B). |

| | | |
|---|---|---|
| 4) | Defendant shall notify the probation officer within seventy-two hours of any change in residence, employer, or any change in job classification. | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance.<br>18 U.S.C. § 3553(a)(2)(C);<br>18 U.S.C. § 3563(b)(13), (15), (16), and (19);<br>18 U.S.C. § 3603(2), (3), (4), and (7);<br>USSG §§5B1.3(b)(1)(D) and (b)(2); USSG §§5D1.3(b)(1)(A)(iii). |
| 5) | Defendant shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician. Defendant shall not use any product containing cannabidiol (CBD) or tetrahydrocannabinol (THC), except as prescribed by a physician. | Evidence-based practice research indicates the use of illicit chemicals is a risk factor for recidivism. This condition is recommended to assist with defendant's rehabilitation, officer and defendant safety, and to protect the public. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C); 18 U.S.C. § 3563(b)(7); 18 U.S.C. § 3603(3); USSG §§5B1.3(b)(1)(A), (B), (C), (D), and (b)(2); USSG §§5D1.3(b)(1)(A)(i), (ii), (iii), and (b)(1)(B). |
| 6) | Defendant shall not visit places where defendant knows or has reason to believe controlled substances are illegally sold, used, distributed, or administered. | Evidence-based practice research indicates that frequenting places where illicit chemicals are sold, used, distributed or administered increases the risk that defendant will purchase, use, or possess illicit chemicals. Individuals involved in the distribution of illicit chemicals present a risk of peer association as identified in the research. This condition supports rehabilitation of defendant and promotes public safety.<br>18 U.S.C. § 3553(a)(1), (a)(2)(B), and (C);<br>18 U.S.C. § 3563(b)(6); 18 U.S.C. § 3603(3);<br>USSG §§5B1.3(b)(1)(A), (B), (C), (D), and (b)(2); USSG §§5D1.3(b)(1)(A)(i), (ii), (iii), and (b)(1)(B). |
| 7) | Defendant shall not meet, communicate, or spend time with any persons defendant knows to be engaged in criminal activity or planning to engage in criminal activity. | Evidence-based practice research indicates that association with peers involved in criminal activity increases the risk of recidivism. This condition promotes and encourages pro-social relationships that are conducive to a law-abiding lifestyle.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C);<br>18 U.S.C. § 3563(b)(6); 18 U.S.C. § 3603(3);<br>USSG §§5B1.3(b)(1)(B), (C), (D), and (b)(2);<br>USSG §§5D1.3(b)(1)(A)(ii), (iii), and (b)(1)(B). |

| | | |
|---|---|---|
| 8) | Defendant shall permit a probation officer to visit defendant at home, work, or some other mutually convenient location designated by the probation officer at any reasonable time and shall permit confiscation of any contraband observed in plain view by the probation officer. | Community contacts ensure compliance with court-ordered conditions and assist defendant in maintaining a law-abiding lifestyle.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C);<br>18 U.S.C. § 3563(b)(13), (15), (16) and (17);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §§5B1.3(b)(1)(A), (B), (C), (D) and (b)(2); USSG §§5D1.3(b)(1)(A)(i), (ii), (iii), and (b)(1)(B). |
| 9) | Defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. | To provide for community safety and rehabilitation of defendant.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C);<br>18 U.S.C. § 3563(b)(18);<br>18 U.S.C. § 3603(2), (3), (4) and (7);<br>USSG §§5B1.3(b)(1)(A), (B), (C), (D), and (b)(2); USSG §§5D1.3(b)(1)(A)(i), (ii), (iii), and (b)(1)(B). |
| 10) | Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court. | Evidence-based practice research indicates contact with criminals and potential involvement in facilitating other crimes sanctioned by law enforcement officers directly contradicts the condition of no new offenses and criminal associations, which are risk factors for recidivism. Therefore, strict monitoring by the Court/probation office is necessary for the safety of the community, defendant, and the supervising probation officer.<br>18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C);<br>18 U.S.C. § 3563(b)(5), (6), (15), (17), and (18);<br>18 U.S.C. § 3603(2), (3), (4), and (7);<br>USSG §§5B1.3(b)(1)(A), (B), (C), (D), and (b)(2); USSG §§5D1.3(b)(1)(A)(i), (ii), (iii), and (b)(1)(B). |
| 11) | Defendant shall report to the probation office in the district to which defendant is released within 72 hours of release from the custody of the Bureau of Prisons, unless instructed by a U.S. probation officer to report within a different time frame. | To review and clarify conditions of supervision imposed by the court at sentencing. To assist with risk and needs assessment, monitoring requirements, release planning, and program referrals. To set goals for supervision. 18 U.S.C. § 5363(b)(15); USSG §5B1.3(c)(1); USSG §5D1.3(b)(2)(A). |
| 12) | Defendant shall not possess a firearm, ammunition, destructive device, or dangerous weapon. | To comply with statutory provisions. To provide for community safety, as well as the safety of the supervising U.S. probation officer.<br>18 U.S.C. §§ 921 and 922; 18 U.S.C. § 5363(b)(10); USSG §5B1.3(c)(10), USSG §5D1.3(b)(2)(J); and *U.S. v. Armour*, 804 F.3d 859, 869 (7th Cir. 2015). |

**Special Conditions**

The following special conditions, in addition to the mandatory conditions, would be recommended if an additional term of supervision is deemed appropriate by the Court:

| SPECIAL CONDITIONS OF SUPERVISION | JUSTIFICATION |
|---|---|
| 13) Provide the supervising U.S. Probation Officer any and all requested financial information, including copies of state and federal tax returns. | Recommended based on the need to monitor defendant's financial records, assess his ability to pay toward his court-ordered financial obligations, and monitor his compliance with the payment of restitution. |
| 14) Refrain from incurring new credit charges, opening additional lines of credit or opening other financial accounts without the prior approval of the supervising U.S. Probation Officer. | Recommended based on the nature of his offense of conviction involving fraud, to evaluate his ability to pay toward his court-ordered financial obligations and monitor his compliance with the payment of restitution. |
| 15) Submit person, property, residence, papers, vehicle, computers [as defined in 18 U.S.C. § 1030(e)(1), or other electronic communications, data storage device, or media], or office to a search conducted by a U.S. Probation Officer at a reasonable time and manner, whenever the probation officer has reasonable suspicion of contraband or of the violation of a condition of release relating to substance abuse or illegal activities; failure to submit to a search may be a ground for revocation; defendant shall warn any other residents that the premises defendant is occupying may be subject to searches pursuant to this condition. | Recommended based on the nature of his offense of conviction, his noncompliance while on supervised release, the need to protect the public from further criminal activity perpetrated by the defendant, and the need to ensure the safety of the supervising U.S. Probation Officer. |
| 16) Participate in mental health referral, assessment, and treatment as approved by the supervising U.S. Probation Officer and comply with all rules, regulations, and recommendations of the mental health agency or its representative to the extent approved by the supervising U.S. Probation Officer. If defendant is eligible for funding from any source to cover the cost of treatment, defendant is to make reasonable efforts to obtain such funding. Participation in treatment does not require payment by defendant unless it is clear defendant can afford it. | Recommended based on defendant's self-reported history of mental health and participation in treatment during his supervised release. |
| 17) Defendant shall provide the supervising U.S. Probation Officer advance notification of any devices associated with or falling within the general category of information technology (IT) that produce, manipulate, store, communicate or disseminate information used by defendant. This includes external and portable hard drives. The probation office is authorized to install | Based on the defendant's offense of conviction, his past self-reports of engaging in online fraudulent activity, and his possession and use of unauthorized IT device(s) while on supervised release. |

| | |
|---|---|
| **applications to monitor any such devices owned or operated by defendant. Defendant is required to comply with the monitoring agreement and may not disable or circumvent any applications. Defendant shall consent to and cooperate with unannounced examinations of any technological equipment owned or used by defendant, including but not limited to retrieval and copying of all data from all information technology devices and any internal or external peripherals based on reasonable suspicion of contraband or illegal activity. The examinations may involve removal of such equipment for the purpose of conducting examination.** | |

### Mandatory Conditions - 18 U.S.C. § 3583(d)

- Defendant shall not commit another federal, state, or local crime. [Note: Any defendant that has been convicted of a felony offense, or is a prohibited person, shall not possess a firearm, ammunition, or destructive device pursuant to 18 U.S.C. §§ 921 and 922.]

- Defendant shall not illegally possess a controlled substance. Defendant is subject to drug testing according to 18 U.S.C. § 3583(d).

- Defendant shall cooperate with the collection of DNA by the U.S. Justice Department and/or the U.S. Probation and Pretrial Services Office as required by Public Law 108-405, if this requirement has not been met.

### Criminal Monetary Penalties

Defendant shall pay the following total financial penalties in accordance with the schedule of payments set forth in his original judgment.

The defendant is to pay mandatory restitution in the amount $1,327,061 (remaining balance is $1,325,936) to the U.S. Clerk of Court for the Southern District of New York to be disbursed to victims of his instant offense.

The defendant does not have the economic resources to allow himself to make full payment of restitution in the foreseeable future under any reasonable schedule of payments. Pursuant to 18 U.S.C. § 3664(f)(3)(B), he is to begin making nominal payments of a minimum of $25 each month, beginning within 30 days of the defendant's release from custody.

The defendant shall notify the Court and the United States Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution.

No interest is to accrue on the unpaid portion of the restitution.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 14, 2026

/s/

Alyssa M. Brody
Senior U.S. Probation Officer

**THE COURT ORDERS:**
☒ The supplemental information will be considered at Mr. Garrison's judicial review on February 5, 2026.
☒ The probation office is authorized to release to the parties the forensic examination report on Joseph Garrison's device.
☐ Other:

_____
Honorable James D. Peterson
U.S. District Judge

January 15, 2026
Date